SRM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **Harold Travis Lyons,**<br>Petitioner<br>-vs-<br>**Judy Frigo, et al.,**<br>Respondent(s) | CV-05-4018-PHX-SRB (JI)<br><br>**REPORT & RECOMMENDATION**<br>**On Petition for Writ of Habeas Corpus**<br>**Pursuant to 28 U.S.C. § 2254** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Picacho, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on December 12, 2005 (#1). On May 11, 2006, Respondents filed their Answer (#13). Petitioner filed a Reply on July 31, 2006 (#18).

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

On February 20, 1998, Petitioner was pulled over in a traffic stop because his rear license plate light was out. (Exhibit G, Mem. Dec. at 2.) The officer determined that Petitioner was driving on a suspended license. The officer also ran a check on the license plate on the truck Petitioner was driving, and determined that the truck had been reported stolen. (*Id.*) Petitioner told the officer that he had purchased the truck for $1,000 from a

friend, Donnie Saunders, but had no documentation of the sale.   Petitioner had been operating the truck with out an ignition key, and speculated to the officer that a key was broken off in the ignition. (*Id.* at 3.)

**B. PROCEEDINGS AT TRIAL**

Petitioner was charged in the Maricopa County Superior Court with one count of theft by controlling property of another knowing or having reason to know that it was stolen, and one count of driving on a suspended license. (Exhibit G, Mem. Dec. at 1-2.)  Petitioner pled not guilty and proceeded to trial.  (*Id.* at 2.)

Petitioner was convicted, and on April 2, 1999, Petitioner was sentenced to 11.25 years on the theft charge, and 116 days on the driving on a suspended license charge, with credit for 116 days served.  (Exhibit D, Sentence.)

**C.  PROCEEDINGS ON DIRECT APPEAL**

Petitioner filed a direct appeal, and appointed counsel filed a brief asserting a single claim for relief: "Did the trial court abuse its discretion by refusing to allow appellant to call Donnie Saunders to the witness stand?"  (Exhibit F, Opening Brief at 6.)  Petitioner cited a single federal authority, *U.S. v. Vandetti*, 623 F.2d 1144 (6th Cir. 1980), as part of a discussion of state court decisions concerning the purposes for which a court may require a witness to invoke their Fifth Amendment privilege in the presence of the jury, e.g. to explain the failure of the witness to testify.  (Exhibit F, Opening Brief at 8-9.)

On February 15, 2000, the Arizona Court of Appeals denied Petitioner's  motion to supplement the appeal brief filed by his attorney. (Exhibit X , Order 2/15/00.)  On April 11, 2000, the Arizona Court of Appeals denied Petitioner's direct appeal, issuing a Memorandum Decision (Exhibit G) that discussed state court decisions governing the issue appealed.

Petitioner then filed a Petition for Review by the Arizona Supreme Court. He raised a single issue:"Did the trial court abuse its discretion by refusing to allow appellant to call Donnie Saunders to the witness stand to corroborate the defense theory, and complete the

story?" (Exhibit H, Pet. Rev. at 2.)  Other than referencing the witness' assertion of his Fifth Amendment privileges, the petition cited no Federal law.  On February 22, 2001 the Arizona Supreme Court summarily denied review.  (Exhibit I. Order 2/22/01.)  The Order and Mandate of the Arizona Court of Appeals issued on March 21, 2001. (Exhibit J, Order 3/21/01.)

### D.  PROCEEDINGS ON POST-CONVICTION RELIEF

**First PCR Proceeding** - On March 15, 2001, Petitioner filed a Notice of Post-Conviction Relief (Exhibit K.)  He filed his *pro se* Petition for Post-Conviction Relief (Exhibit L) the same day.  Counsel was appointed, and on or about August 17, 2001,counsel filed a Petition (Exhibit M) arguing that Petitioner received ineffective assistance of trial counsel as a result of counsel's failure to: (1) argue the purposes for calling Donnie Saunders to the stand despite his invocation of his Fifth Amendment Privilege; and (2) call to testify two witnesses: an eyewitness to Petitioner's purchase of the truck from Donnie Saunders, and Petitioner's passenger at the time of his arrest.  Petitioner asserted no federal law in arguing his claims, and referred to a single State decision, *State v. Ysea*, 191 Ariz. 372, 956 P.2d 499 (1998), as a basis for his ineffective assistance claims. (Exhibit M at 8.)  An evidentiary hearing was held on March 1, 2002. (Exhibit N.)

On April 29, 2002, the trial court issued an Order (Exhibit O) denying the Petition. The court found that trial counsel had tactical reasons for not calling the passenger, was unaware of the purported witness to the sale, but was deficient with regard to the calling of Donnie Saunders, the purported seller.  However, the trial court found "in light of the evidence presented at trial," no prejudice resulted from the failure to call Saunders to invoke his privilege in the presence of the jury.  (*Id*. at 3.)

Petitioner, through counsel, filed a Petition for Review by the Arizona Court of Appeals (Exhibit P),  repeating the arguments made to the trial court.  On September 25, 2003, the Arizona Court of Appeals summarily denied review (Exhibit Q).

**Second PCR Proceeding** - On July 29, 2004, Petitioner filed a second Petition for

Post-Conviction Relief (Exhibit R).  Petitioner argued: (1) denial of access to the court; (2) conflict of interest with trial counsel; (3) ineffective assistance of trial and appellate counsel; (4) judicial misconduct and abuse of discretion; (5) manifest injustice; (6) actual innocence; (7) insufficiency of the evidence as to all of the elements charged; and (8) insufficiency of the evidence on the issue of the value of the truck (more than $3,000 but less than $25,000).

On August 19, 2004, the trial court summarily denied the petition as barred under Arizona's preclusion bar, Ariz. R. Crim. P. 32.2(a) (Exhibit S).

Petitioner filed a *pro se* Petition for Review by the Arizona Court of Appeals (Exhibit T), arguing that the trial court erred in finding his claims precluded.  On August 3, 2005, the Arizona Court of Appeals summarily denied review (Exhibit U).

**E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

Petitioner commenced the current Federal habeas corpus proceedings by filing his Petition for Writ of Habeas Corpus, pursuant to  28 U.S.C. § 2254 (#1) on December 12, 2005.  Petitioner asserts the following eight primary grounds for relief:

1. The ineffective assistance of trial counsel .

2. The ineffective assistance of appellate counsel.

3. Denial of due process from: (a) denial of hearing on request to call Donnie Saunders; (b) failure to act on counsel's conflict of interest; and (c) altered jury instructions.

4. Denial of due process by cumulative errors.

5. Actual innocence.

6. Denial of meaningful access to the courts by denial of hybrid representation.

7. Insufficient evidence.

Respondents filed their Answer to the Petition on May 11, 2006 (# 13).  Respondents argue that grounds for relief Three and Six are state law claims not cognizable in this Federal habeas proceeding.  Respondents argue that the grounds are all procedurally defaulted, except for Ground Four and the portion of Ground One asserting ineffective assistance of

1    trial counsel as a result of counsel's failure to call Donnie Saunders and Petitioner's two

2    additional witnesses.   Respondents argue that the un-defaulted portion of Ground One and

3    Ground  Four are without merit.

4         Respondents argue that despite the holding of *Swoopes v. Sublett*, 196 F.3d 1008 (9th

5    Cir.1999), presentation to the Arizona Supreme Court is required to exhaust state remedies.

6    Respondents ask that this Court, if it does not accept Respondents' reasoning, certify a

7    question to the Arizona Supreme Court about the availability of review by that court of

8    Federal claims by Arizona criminal defendants.

9         On July 13, 2006, Petitioner filed his Reply(#18) in support of his Petition.  Petitioner

10   argues that even with respect to claims based on state laws, this Court must review his claims

11   for constitutional error.  Petitioner argues that his claims are not procedurally defaulted,

12   because although presented in a successive post conviction relief petition, that petition

13   asserted actual innocence, and thus was subject to an exception to the successive petition

14   rule. Alternatively, Petitioner asserts that exceptional circumstances justify relief despite any

15   procedural default.

16

17                    **III. APPLICATION OF LAW TO FACTS**

18   **A.  PROCEDURAL BAR**

19        Respondents argue that with the exception of two of his claims,  Petitioner has failed

20   to properly exhaust his state remedies on his claims, because he never fairly presented the

21   claims to the state appellate courts.   They argue that the claims are now either procedurally

22   defaulted or procedurally barred,[1] and thus must be dismissed with prejudice.

23        In so arguing, Respondents concede that Petitioner has presented those habeas claims

24   in his second PCR petition.   Petitioner makes the same argument in his Reply.  Both note,

25

26        [1] The concepts of "procedural default" and "procedural bar" have distinct but related natures, grounded in the
27   concepts of exhaustion on the one hand, and  the "adequate and independent state procedural grounds" doctrine on the
     other.  *See Coleman v. Thompson*, 501 U.S. 722, 729-732 (1991).  In the latter, it is a "state judgment" that is being
28   treated with comity, *id.* at 730, while the exhaustion doctrine is a matter of treating the state courts themselves with
     comity by allowing them "the first opportunity" to address the federal claim, *id.* at 731.

1  however, that the Arizona trial court refused to consider the claims, relying upon Arizona's

2  preclusion bar.  Ariz. R. Crim. P. 32.2(a).  The postcard denial of Petitioner's claims by the

3  Arizona court of appeals must be deemed to be on the same basis.  *Ylst v. Nunnemaker*, 501

4  U.S. 797, 804 (1991) (to determine whether a state procedural ruling bars federal review, the

5  habeas court must look to the "last reasoned opinion on the claim").

6        Federal habeas review of a federal claim is precluded when the state court has

7  disposed of the claim on a procedural ground "that is both 'independent' of the merits of the

8  federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255,

9  260 (1989); *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003) (citing *Coleman v.*

10  *Thompson,* 501 U.S. 722, 729 (1991)).  *But see, Stewart v. Smith*, 536 U.S. 856, 860 (2002)

11  ("assum[ing]" independence standard applies on habeas).   "Once the state has adequately

12  pled the existence of an independent and adequate state procedural ground as an affirmative

13  defense, the burden to place that defense in issue shifts to the petitioner." *Bennett v. Mueller*,

14  322 F.3d 573, 584 (9th Cir.2003).

15        Petitioner  offers nothing to show that the Arizona procedural bar applied to his

16  second PCR petition is not "independent and adequate."  Accordingly, this Court must deem

17  the preclusion bar pled by Respondents to be an independent and adequate state ground for

18  denying Petitioner's claims.  Therefore, Federal habeas review of those claims is barred, and

19  this Court must dismiss those claims.

20        **Actual Innocence & Successive Petitions** - Petitioner argues in his Reply that

21  because his second PCR petition asserted actual innocence, it should have been subject to an

22  exception to the successive petition rule, and therefore should not be deemed procedurally

23  barred.   Petitioner, in essence, asks this Court to conclude that the dismissal of his second

24  PCR petition was in error under state law.  A federal court may not second-guess the state

25  court's construction of its own state law unless "it appears that its interpretation is an obvious

26  subterfuge to evade the consideration of a federal issue." *Peltier v. Wright*, 15 F.3d 860, 862

27  (9th Cir. 1994) (citing *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)).

28        Moreover, Petitioner has failed to show that the state court's decision was in error.

1   It is true that Arizona's preclusion bar does recognize exceptions for certain claims. Ariz. R.

2   Crim. P. 32.2(b).    And, among the exceptions recognized is that for claims of actual

3   innocence. Rule 32.1(h) provides an exception where:

4           h. The defendant demonstrates by clear and convincing evidence that
            the facts underlying the claim would be sufficient to establish that
5           no reasonable fact-finder would have found defendant guilty of the
            underlying offense beyond a reasonable doubt, or that the court would
6           not have imposed the death penalty.

7   However, it is not the entire petition that is excepted under Rule 32.1 (h). Rather, it is only

8   the specific "claim" whose "underlying" facts establish the petitioner's actual innocence.

9

10  **B. PROCEDURAL DEFAULT**

11      Respondents also argue that those claims which Petitioner has presented to the

12  Arizona courts were not only procedurally barred, but were not properly exhausted, and are

13  now procedurally defaulted, because Petitioner failed to present those claims to the Arizona

14  Supreme Court.

15      Generally, a federal court has authority to review a state prisoner's claims only if

16  available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)

17  (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28

18  U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to

19  show that he has properly exhausted each claim.  *Cartwright v. Cupp,* 650 F.2d 1103, 1104

20  (9th Cir. 1981)(*per curiam*), *cert. denied,* 455 U.S. 1023 (1982).

21      Ordinarily,  "to exhaust one's state court remedies in Arizona, a petitioner must first

22  raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-

23  conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir.

24  1994).    Only one of these avenues of relief must be exhausted before bringing a habeas

25  petition in federal court.    This is true even where alternative avenues of reviewing

26  constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211

27  (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S.

28  1059 (1989).  In cases not carrying a life sentence or the death penalty, "claims of Arizona

state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them." *Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir.1999).

Respondents cite the recent Supreme Court decision in *Baldwin v. Reese,* 541 U.S. 27 (2004), decided March 2, 2004, as rejecting the reasoning of *Swoopes.* However, since *Baldwin,* the Ninth Circuit has reiterated its conclusion in *Swoopes.* In *Castillo v. McFadden*, decided February 24, 2005, the court noted:

> "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.' *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir.1999).

*Castillo*, 299 F.3d at 998, n. 3.  Indeed, the *Castillo* decision even cites to *Baldwin.  Id.* at 999.

Moreover, nothing in the *Baldwin* decision serves to undermine the rationale of *Swoopes.*  Respondents cite the portion of *Baldwin* which notes that the state habeas petitioner is required to present his claims "in each appropriate state court (including a state supreme court with powers of discretionary review)." *Baldwin,* 124 S.Ct. at 1349.  However, the question of "how" to present (e.g. is the state court required to search the record below for federal claims) was before the *Baldwin* Court, not the question of "where" to present. Moreover, that very portion of *Baldwin* cites *O'Sullivan* as one of its authorities.  *O'Sullivan* itself stands for the proposition that the mere fact that review by a court is "discretionary" does not make it unavailable for exhaustion purposes.  *O'Sullivan* also, recognized, however, that not all discretionary procedures are "available."

> The exhaustion doctrine, in other words, turns on an inquiry into what procedures are "available" under state law. In sum, there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available. We hold today only that the creation of a discretionary review system does not, without more, make review in the Illinois Supreme Court unavailable.

*O'Sullivan,* 526 U.S. at 847-848.

Unlike the Illinois procedure considered in *O'Sullivan*, Arizona does not merely make review by the Arizona Supreme Court discretionary.  Rather, in *Sandon*, the Arizona Supreme Court  noted that there was no right to appeal to the Arizona Supreme Court except

in cases where the death sentence or life imprisonment is imposed, citing Ariz. Rev. Stat. A.R.S. § 12-120.21(A)(1). *Sandon,* 161 Ariz. at 158, 777 P.2d at 221. The Arizona Supreme Court held that a petition for such discretionary review by the Arizona Supreme Court was not required to exhaust state remedies for federal habeas purposes. "Once the defendant has been given the appeal to which he has a right, state remedies have been exhausted." *Id.* (quoting *State v. Shattuck,* 140 Ariz. 582, 585, 684 P.2d 154, 157 (1984)). That determination is the "more" that the Supreme Court found lacking in Illinois.

The pronouncement that *Sandon* makes review by the Arizona Supreme Court "unavailable" is not a "rank fiction" as suggested by Respondents. (Answer, #13 at 13.) Rather it is the federal term of art which signifies the Arizona Supreme Court's decision to exclude itself from the process necessary to subsequent federal habeas review, while still providing itself and the citizens of Arizona the opportunity for that court's discretionary review.

The Arizona courts have not retreated from *Sandon*. Until they do so, or the Supreme Court overrules *O'Sullivan*, this Court must conclude that *Swoopes* remains good law. Moreover, the absence of any signal that *Sandon* is no longer a clear pronouncement of Arizona law makes certification of a question to the Arizona Supreme Court both unnecessary and inappropriate.

Respondents encourage this Court to divine from the number of cases in which discretionary review is granted by the Arizona Supreme Court some abandonment of *Sandon*. (Answer, #13 at 12-13.) However, this Court need not rely upon such perceptions to ascertain the will of the Arizona court. In *O'Sullivan*, Justice Souter noted that it was not controlling that the "state court has occasionally employed [a procedure for discretionary review] to provide relief." Indeed, *Swoopes* was not based upon some sporadic rejection of jurisdiction by the Arizona Supreme Court, but upon the state court's expression that its jurisdiction was "outside the standard review process and has plainly said that it need not be sought for the purpose of exhaustion." O'Sullivan, 526 U.S .at 1735 (Souter, J. concurring).

Respondents also argue that *Sandon* was a procedurally peculiar case, *i.e.* a delayed

petition fore review by the Arizona Supreme Court, which should not be relied upon outside that context. (Answer #13 at 13-14.) *Sandon* dealt with a case where the defendants had simultaneously appealed and filed a PCR petition, and after the PCR petition was denied, consolidated the petition for review with the direct appeal. Unsuccessful, the defendant filed a petition for review by the Arizona Supreme Court, seeking review of only 3 of the 13 issues decided below. The Arizona Supreme Court denied review. The defendant then filed a federal habeas petition raising claims presented to the Arizona Court of Appeals, but not the Arizona Supreme Court. The federal court dismissed the claims as unexhausted, based on the failure to present them to the Arizona Supreme Court. The Petitioner then sought delayed review of the additional claims by the Arizona Supreme Court. Noting that the case would ordinarily be disposed of summarily, the Arizona Supreme Court noted that "because the Court continues to receive large numbers of prisoner petitions seeking to exhaust state remedies, we briefly address that issue based upon the procedural history of the case." *Sandon*, 161 Ariz. at 157, 777 P.2d at 220. Thus, although the specific petition before the Arizona Supreme Court in *Sandon* was a delayed petition for review, the procedure they were addressing was the normal petition for review on a direct appeal or petition for post-conviction relief. They concluded that the claims were exhausted. "When counsel, whether retained or appointed, has followed the procedures as outlined above, as counsel for Sandon did in this matter, the case in the Arizona courts is over." *Id.* at 158, 777 P.2d at 221.

Because the *Sandon* court was addressing the procedure prior to the habeas petition (*i.e.* the direct appeal and PCR petition for review) to explain why the subsequent, delayed petition was unnecessary, the only unique procedure involved was the consolidation of the direct appeal and PCR processes in the Arizona Court of Appeals. Respondents do not suggest why such consolidation should make the analysis of *Sandon* inapposite to cases where the direct appeal and PCR petition for review are serial rather than simultaneous. The *Sandon* court made nothing of that unique process, other than to note it in the procedural history. Instead, they focused on the discretionary nature of their own review to conclude that it was not necessary for exhaustion for federal purposes.

Based upon the foregoing, the undersigned concludes that the rationale and holding of *Swoopes* remains in tact after the *Baldwin* decision. Because Petitioner received neither a life sentence nor the death penalty, the presentation of his claims to the Arizona Court of Appeals was sufficient to exhaust his state remedies.

**Arizona Procedural Bars to Further Exhaustion** - Respondents assert that Petitioner's unexhausted claims may no longer be presented in the state courts, citing Arizona Rules of Criminal Procedure 32.1, 32.2(a) & (b), and 32.4.  (Answer #13 at 17.)

Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence.   The Arizona Rules of Criminal Procedure do not provide for a successive direct appeal. *See generally* Ariz.R.Crim.P. 31.  Accordingly, direct appeal is no longer available.

Further, Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."   *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   While Rule 32.4(a) does not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h), Petitioner has not asserted that any of these exceptions are applicable to him.

Moreover, under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post conviction relief that  "has been waived at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P. 32.2.

## C.  STATE LAW CLAIMS

Respondents argue that Grounds for relief Three and Six are based on state law and therefore are not cognizable on habeas review. Indeed, a state prisoner is entitled to habeas relief under 28 U.S.C. § 2254 only if he is held in custody in violation of the Constitution, laws or treaties of the United States.  Federal habeas relief is not available for alleged errors

in the interpretation or application of state law.  *Estelle v. McGuire*, 502 U.S. 62 (1991); *Middleton v. Cupp*, 768 F.2d 1083 (9th Cir. 1985), *cert. denied*, 478 U.S. 1021 (1986).

Further, violations of state law, without more, do not deprive a petitioner of due process.  *Cooks v. Spalding*, 660 F.2d 738, 739 (9th Cir. 1981), *cert. denied*, 455 U.S. 1026 (1982).  It has long been understood that a state may violate its own law without violating the United States Constitution.  *Gryger v. Burke*, 334 U.S. 728, 731 (1948).

> We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.

*Id*., 334 U.S. at 731.

To qualify for federal habeas relief, an error of state law must be "sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment."  *See Pully v. Harris*, 465 U.S. 37, 41 (1984).   To sustain such a due process claim founded on state law error, Petitioner must show that the state court "error" was "so arbitrary and fundamentally unfair that it violated federal due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (quoting *Reiger v. Christensen*, 789 F.2d 1425, 1430 (9th Cir.1986)).   To receive review of what otherwise amounts to nothing more than an error of state law, a petitioner must argue "not that it is wrong, but that it is so wrong, so surprising, that the error violates principles of due process"; that a state court's decision was "such a gross abuse of discretion" that it was unconstitutional. *Brooks v. Zimmerman*, 712 F.Supp. 496, 498 (W.D.Pa.1989).

## D. APPLICATION OF PROCEDURAL DEFENSES TO INDIVIDUAL CLAIMS

**Ground One - Ineffective Assistance of Trial Counsel** - For Ground One of his Petition, Petitioner asserts ineffective  assistance of trial counsel on the following bases: (a) failure to investigate actual innocence claim; (b) failure to subpoena evidence; (c) failure to interview potential witnesses; (d) conflict of interest; (e) failure to object to evidence; (f) failure to request jury instructions; (g) failure to argue the jury's expectation to hear

1    testimony from a listed witness; (h) failure to adequately cross examine witness; and (i)

2    failure to object to jury instruction.

3         Petitioner presented no claims of ineffective assistance on direct appeal.

4         He did assert ineffective assistance of counsel in his first PCR petition.  However,

5    those claims were limited to arguing that counsel was ineffective for:  (1) failing to argue the

6    purposes for calling Donnie Saunders to the stand despite his invocation of his Fifth

7    Amendment privilege; and (2) to call to testify a witness to Petitioner's purchase of the truck

8    from Donnie Saunders, and Petitioner's passenger at the time of his arrest.  To the extent that

9    parts (c) and (g) of Ground One are based upon the same claims, these claims were presented

10   to the state courts and decided on Petitioner's first PCR proceeding.[2]

11        Although Petitioner did not explicitly invoke federal law in arguing ineffective

12   assistance of counsel, the trial court acknowledged that the right to counsel he relied on arose

13   under federal law by citing *McMann v. Richardson*, 397 U.S. 759 (1970).  (Exhibit O, M.E.

14   4/29/02 at 3.)   The requirements of exhaustion have been met where the state has actually

15   passed on the federal claim.  *See Greene v. Lambert,* 288 F.3d 1081, 1086 (9th Cir. 2002)

16   (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989);  *Sandstrom v. Butterworth*, 738 F.2d

17   1200, 1206 (11th Cir.1984) ("[t]here is no better evidence of exhaustion than a state court's

18   actual consideration of the relevant constitutional issue"); and *Walton v. Caspari,* 916 F.2d

19   1352, 1356-57 (8th Cir.1990) (state court's sua sponte consideration of an issue satisfies

20   exhaustion).   Thus, these claims were properly exhausted, and this Court may address them

21   on their merits.

22        The balance of these ineffective assistance claims were presented in Petitioner's

23   second PCR petition, i.e. (1) failure to investigate actual innocence claim (see Exhibit R,

24   Second PCR Pet. at Exhibit 2, Memorandum at 10); (2) failure to subpoena evidence (*id*. at

25   11); (4) conflict of interest evidence (*id*. at 14); (5) failure to object to evidence (*id*. at 16);

---

[2]  Respondents construe, without objection from Petitioner, this claim to refer to a the claim asserted in
Petitioner's First PCR Petition, *i.e.* failure to call Charles Pennell who was present when Petitioner bought the truck from
Donnie Suanders, and Carried Dyer, Petitioner's passenger at the time who saw paperwork for the purchase of the truck
and a broken key which Petitioner put in the ignition.  (*See* Answer, #13 at 27-28 and n. 4.)

1   (6) failure to request jury instructions (*id*. at 16-17); (8) failure to adequately cross examine

2   witness (*id*. at 21-22); (9) failure to object to jury instruction (*id*. at 25-26).  These claims

3   were denied on the basis of Arizona's independent and adequate preclusion bar and as such,

4   consideration of them by this habeas court is barred.

5       Based on the foregoing, only parts (c) and (g) of Ground One can be addressed on

6   their merits, and the balance of Ground One must be dismissed as procedurally barred.

7       **<u>Ground Two - Ineffective Assistance of Appellate Counsel</u>** - For Ground Two of

8   his Petition, Petitioner asserts ineffective assistance of *appellate* counsel on the basis that

9   appellate counsel failed: (1) to challenge the sufficiency of the evidence; (2) to appeal the

10  denial of Rule 20 motion; (3) to challenge defective jury instruction; (4) to appeal motion for

11  new trial; and (5) to raise all meritorious issues on direct appeal including not being able to

12  confront his accuser (the alleged victim who was subpoenaed to testify – the owner of the

13  truck).    Respondents argue that these claims are either procedurally defaulted, or

14  procedurally barred to the extent the were raised in Petitioner's second PCR petition.

15  (Answer # 13 at 20-21.)

16      Petitioner presented no claims of ineffective assistance on direct appeal.   He did

17  assert ineffective assistance of counsel in his first PCR petition.  However, those claims were

18  limited to arguing that *trial* counsel was ineffective. (*See* Exhibit M.)

19      Claims of ineffective assistance of *appellate* counsel were presented in Petitioner's

20  second PCR petition. (*See* Exhibit R, Second PCR Pet.)  Petitioner argued that appellate

21  counsel was ineffective for failing: (1) to challenge the sufficiency of the evidence (Exhibit

22  R at 29-31); (2) to appeal the denial of the motion for judgment of acquittal (*id*. at 31-32);

23  (3) to challenge a defective jury instruction (*id*. at 32); (4) to challenge the trial cant's failure

24  to appoint new counsel to cure a conflict of interest (*id*. at 32-34); and (5) to raise all

25  meritorious issues of appeal (*id*. at 34).  Thus, it appears that the substance of Petitioner's

26  current Ground Two was raised in his Second PCR petition.  However, those clams were

27  denied on the basis of Arizona's independent and adequate preclusion bar and as such,

28  consideration of them by this habeas court is barred.

1      Therefore, Petitioner's Ground Two must be dismissed as procedurally barred.

2      **Ground Three - Denial of Due Process** - For Ground Three of his Petition, Petitioner

3  asserts a denial of his due process rights and rights under the Fifth and Sixth Amendments

4  in three regards: (a) the denial of Petitioner's request to call Donnie Saunders to the stand

5  without holding a hearing to determine whether non-incriminating testimony could be

6  presented; (b) failure to conduct a hearing or to appoint new counsel based on counsel's

7  conflict of interest; and (c) giving of altered jury instructions.

8      Respondents argue that these claims are state law claims not cognizable on federal

9  habeas review.  To the extent that Petitioner is asserting some violation of state law,

10  Respondents are correct in noting that such claims would not be cognizable.  *Estelle v.*

11  *McGuire*, 502 U.S. 62 (1991).  However, Petitioner does not merely assert violations of state

12  law, but argues that the trial court's actions resulted in a denial of Petitioner's federal rights

13  under the "Due Process Clause of the 14th Amendment ... 5th Amendment, [and] 6th

14  Amendment."  (Petition, #1 at 7.)

15      Respondents also argue that these claims are procedurally defaulted and/or

16  procedurally barred.  Each claim will be addressed in turn.

17      3(a) Denial of Request to Call Saunders - Petitioner did assert on direct appeal the first

18  of his claims in his Ground Three.  Petitioner's appellate brief asked: "Did the trial court

19  abuse its discretion by refusing to allow appellant to call Donnie Saunders to the witness

20  stand?"  (Exhibit F, Opening Brief at 6.)  In making this claim, Petitioner cited a federal

21  authority, *U.S. v. Vandetti*, 623 F.2d 1144 (6th Cir.  1980), as part of a discussion of state

22  court decisions concerning the purposes for which a court may require a witness to invoke

23  their Fifth Amendment privilege in the presence of the jury, *e.g.* to explain the failure of the

24  witness to testify.  (Exhibit F, Opening Brief at 8-9.)  Those state court decisions included

25  *State v. Corrales,* 138 Ariz. 583, 587, 676 P.2d 615, 619 (Ariz.,1983), which is itself founded

26  upon a Fifth Amendment analysis.  The Arizona Court of Appeals relied on *Corrales* in

27  rejecting the claim, and the Arizona Supreme Court's post-card denial is deemed to be based

28  on the same reasoning.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

It is true that Petitioner has somewhat reformulated his claim, now asserting that the error consisted of the failure to hold a hearing to determine whether non-incriminating testimony could be presented prior to the trial court's ruling prohibiting the calling of Saunders.  However, "new factual allegations do not render a claim unexhausted unless they 'fundamentally alter the legal claim already considered by the state courts.' " *Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)).  Here, the fundamental claim remains the same: Petitioner should have been permitted to call Saunders to the stand despite his assertion of his Fifth Amendment privilege, in order to explain to the jury Saunders' absence..

However, the Arizona Court of Appeals rejected this claim on the basis that Petitioner waived the claim by failing to argue to the trial court a *res gestae* basis for calling Saunders. "Because defendant failed to apprise the trial court of the reason for calling Saunders as a witness, defendant cannot now claim that the trial court abused its discretion in failing to find that the value of calling Saunders outweighed the potential prejudice." (Exhibit G, Mem. Dec. at 7.)  Accordingly, this claim was procedurally barred, and is now not subject to habeas review.

3(b) Conflict of Interest - Petitioner also argues in Ground Three that the trial court erred when it failed to address trial counsel's conflict of interest.  Petitioner did not assert this claim in either his direct appeal or his first PCR petition.  (Exhibit F and M.)

Petitioner did assert the facts underlying this claim in his second PCR Petition. (Exhibit R, Attachment 2, Memorandum at 35-36.)  However, even if deemed to be a presentation of his federal claim, this claim was procedurally barred, when the state courts dismissed this petition under the Arizona preclusion bar.  Accordingly, this claim is not now subject to habeas review.

3(c) Altered Jury Instructions - Finally, Petitioner argues in Ground Three that the trial court erred when it issued "altered" jury instructions.  Petitioner did not assert this claim in either his direct appeal or his first PCR petition.  (Exhibit F and M.)

Petitioner did assert the facts underlying this claim in his second PCR Petition.

1   (Exhibit R, Attachment 2, Memorandum at 36.)  However, this claim was also procedurally

2   barred when the state courts applied the Arizona preclusion bar to that PCR petition.

3   Accordingly, this claim is not now subject to habeas review.

4          **Ground Four - Denial of Due Process** - For Ground Four of his Petition, Petitioner

5   asserts a denial of his due process rights resulting from: "The numerous instances of

6   ineffectiveness of both trial and appellate counsels, coupled with the trial court errors and

7   abuses." Petitioner argues that this resulted in "manifest injustice" and a "miscarriage of

8   justice." (Petition, #1 at 8.) Respondents assert that this is simply a reassertion of Petitioner's

9   other claims, and thus subject to the same defects and defenses that preclude relief on the

10  individual claims.  (Answer, #13 at 21.)  The undersigned, however, construes this claim to

11  be an assertion that the cumulative errors in the state courts combined to deny Petitioner due

12  process of law.  *See Ceja v. Stewart*, 97 F.3d 1246, 1254 (9th Cir. 1996). ("Multiple errors,

13  even if harmless individually, may entitle a petitioner to habeas relief if their cumulative

14  effect prejudiced the defendant.").

15         However, Petitioner did not properly exhaust such a claim.  It was not presented in

16  either his direct appeal or his first PCR petition.  (*See* Exhibit F and M.)  This claim was

17  arguably presented in Petitioner's second PCR Petition.  (*See* Exhibit R, Attachment 2,

18  Memorandum at 37.) However, this claim was also procedurally barred when the state courts

19  dismissed this petition under the Arizona preclusion bar.  Accordingly, this claim is not now

20  subject to habeas review.

21         **Ground Five - Actual Innocence**  - For his Fifth Ground for relief, Petitioner asserts

22  that he is actually innocent of the charges.  (Petition, #1 at 7.)  Respondents properly argue

23  (Answer #13 at 20-21) that this claim was first presented in Petitioner's second PCR petition

24  (Exhibit R, Attachment 2, Memorandum at 38), was subject to the state procedural bar, and

25  is now not subject to federal habeas review.

26         **Ground Six - Denial of Access** - For his Ground Six, Petitioner asserts that he was

27  denied meaningful access to the courts when the Arizona Court of Appeals refused to allow

28  Petitioner to supplement his direct appeal.

1    Respondents argue that, in essence, because there is no federal right to hybrid

2    representation, *see e.g. McKaskle v. Wiggins,* 465 U.S. 168, 183 (1984), Petitioner must be

3    challenging the state law ruling that hybrid representation is not permitted in the Arizona

4    courts.  However, Respondents confuse the absence of a federal right with the absence of a

5    federal claim.  Petitioner, at least now, clearly asserts a claim under federal law.

6    Moreover, Petitioner does not assert that he was entitled to hybrid representation in

7    violation of the Sixth Amendment, but instead argues that he was denied meaningful access

8    to the courts by the denial of such representation.  Petitioner explicitly makes this claim

9    under the Fifth and Fourteenth Amendments.  (Petition, #1 at "8".)  Indeed, Prisoners have

10   a federal constitutional right of access to the courts, which right of access is grounded in the

11   Due Process and Equal Protection Clauses.  *Cornett v. Donovan,* 51 F.3d 894, 897 (9th Cir.

12   1995).

13   Respondents also argue that this claim is either procedurally barred or procedurally

14   defaulted.  (Answer #13 at 20-21.)  This claim was not presented in Petitioner's briefs on

15   direct appeal, first PCR petition, or second PCR petition.  (*See* Exhibits F, M and R.)

16   However, Petitioner did present his request for hybrid representation directly to the

17   Arizona Court of Appeals when he moved for leave to supplement or to require counsel to

18   file an *Anders* brief.  In rejecting the motion, the Arizona Court of Appeals addressed the

19   merits of the federal claim, as evidenced by the citation to *State v. Rickman,* 148 Ariz. 499,

20   715 P.2d 752 (1986), which is based on both Arizona law and federal Sixth Amendment law

21   as set out in *McKaskle v. Wiggins,* 465 U.S. 168, 183 (1984) (no right to "hybrid"

22   representation as part of the Sixth Amendment right to self-representation).  (*See* Exhibit X,

23   Order 2/15/00.)

24   There is nothing in the record, however, to suggest that a Due Process or Equal

25   Protection right of meaningful access was asserted by Petitioner or addressed by the Arizona

26   Court of Appeals in connection with Petitioner's request to file a supplemental brief.

27   Petitioner would be barred from now raising this due process claim before the Arizona Court

28   of Appeals under Arizona's preclusion bar (Ariz.R.Crim.P. 32.2), and under its timeliness

1    rules (Ariz.R.Crim.P. 32.4).  None of the exceptions in Ariz.R.Crim.P. 32.1(d) through (h)

2    to the timeliness bar would apply.

3            Nor does it appears that such exceptions in Rule 32.1 would apply to Petitioner.  The

4    excepted claims are:

5                    d. The person is being held in custody after the sentence
                 imposed has expired;
6                    e. Newly discovered material facts probably exist and such facts
                 probably would have changed the verdict or sentence. Newly
7                discovered material facts exist if:
                         (1)    The newly discovered material facts were
8                discovered after the trial.
                         (2)    The defendant exercised due diligence in securing
9                the newly discovered material facts.
                         (3)    The newly discovered material facts are not merely
10               cumulative or used solely for impeachment, unless the impeachment
                 evidence substantially undermines testimony which was of critical
11               significance at trial such that the evidence probably would have
                 changed the verdict or sentence.
12                   f. The defendant's failure to file a notice of post-conviction relief
                 of-right or notice of appeal within the prescribed time was without fault
13               on the defendant's part; or
                         g. There has been a significant change in the law that if
14               determined to apply to defendant's case would probably overturn the
                 defendant's conviction or sentence; or
15                   h. The defendant demonstrates by clear and convincing evidence
                 that the facts underlying the claim would be sufficient to establish that
16               no reasonable fact- finder would have found defendant guilty of the
                 underlying offense beyond a reasonable doubt, or that the court would
17               not have imposed the death penalty.

18   Ariz.R.Crim.P. 32.1.

19            Paragraph 32.1 (d) (expired sentence) has no because Petitioner is attacking the

20   validity of his conviction, not the duration of his incarceration.  Petitioner's Ground 6 is not

21   based on newly discover evidence, and therefore paragraph (e) has no application.  Paragraph

22   (f) has no application because Petitioner filed a timely notice of appeal, and the notice of

23   post-conviction relief of-right applies only to petitions filed following a guilty or nolo

24   contendre plea. *See* Ariz.R.Crim.P. 32.1 (defining when petition of-right). *See also Moreno*

25   *v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998) (on certified question holding that "notice

26   of appeal" in 32.1(f) is direct appeal only, and not appeal from denial of post-conviction

27   relief).  Paragraph (g) has no application because Petitioner's Ground 6 does not assert a

28   change in the law.  Finally, paragraph (h) has no application because the Petitioner's Ground

6 is not based upon an assertion of facts establishing his innocence.

Accordingly, the claim presented in Petitioner's Ground Six is procedurally defaulted.[3]

**Ground Seven - Insufficient Evidence** - For his Seventh ground for relief, Petitioner argues that there was insufficient evidence to sustain his conviction, resulting in a denial of due process.  (Petition #1 at "6".)   Respondents argue that this claim is either procedurally defaulted or procedurally barred.

Petitioner did not assert this claim in his direct appeal or his first PCR petition.  (*See* Exhibits F and M.)  Petitioner did assert the claim in his Second PCR Petition.  (Exhibit R at 1.)  However, that claim was rejected as procedurally barred, and is thus barred from habeas review.

**Summary re Exhaustion of Claims** - Petitioner has failed to fairly present, and has now procedurally defaulted on the claims in Ground 6.  Petitioner presented the claim in Ground 3(a)(denial of request to call Saunders), but that claim was disposed of on the independent and adequate state ground of waiver, and is thus procedurally barred.  Petitioner presented in his Second PCR Petition the claims in Grounds 1 (except parts (c) and (g)), 2, 3(b), 3(c), 4,  5, and 7, but those claims were disposed of on the independent and adequate state grounds of Arizona preclusion bar, and are thus procedurally barred.  Petitioner has properly exhausted his claims in Grounds 1(c) (ineffective assistance re failure to interview potential witnesses) and 1(g) (failure to argue the jury's expectation to hear testimony from a listed witness).

**Cause and Prejudice** - If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).  Petitioner has not

___

[3] Arguably, Petitioner did exhaust a Sixth Amendment claim based on the denial of the request to file a supplemental brief.  However, Petitioner's Ground Six is not based on the Sixth Amendment.  Moreover, to the extent that the claim is based on the Sixth Amendment, it would likely be without merit.  *See McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (no right to hybrid represenation).

1    offered any basis for a finding of cause and prejudice.

2         Petitioner does argue that the exhaustion requirement is satisfied where there is an
3    "'exceptional circumstance where need for remedy afforded by writ is apparent.' " (Reply,
4    #18 at 4 (quoting *Fulwood v. Stone,* 394 F.2d 939 (1968)).)  Petitioner mischaracterizes the
5    import of *Fulwood* which does not authorize relief in the face of a procedural default based
6    on apparent need.  Rather, *Fulwood* held that the procedural default could be overlooked in
7    the particular circumstances of that case, given the special concern for the "welfare of
8    minors," the "rehabilitative goals of juvenile court proceedings" and the fact that the
9    procedural default was caused by the juvenile's attorney.  *Id.* at 942.

10        Even if Petitioner correctly summarized the law in 1968 at the time of the decision in
11   *Fulwood,* that law would not apply here for two reasons.  First, *Fulwood* dealt with a
12   challenge to detention under the Juvenile Court of the District of Columbia, and thus dealt
13   with a federal judgment, not a state court one.  Second, at the time *Fulwood* was decided, the
14   procedural default rules were judicially adopted guides for the exercise of the court's habeas
15   power.  The court in *Fulwood* noted that the exhaustion rule "has not been regarded as
16   'jurisdictional.'"  *Fulwood*, 394 F.2d at 944, n. 8.  The law of exhaustion changed, however,
17   when the "Antiterrorism and Effective Death Penalty Act of 1996," Pub. L. No. 104-132, 110
18   Stat 1214, was enacted on April 24, 1996.  The effect of the AEDPA was to codify the
19   exhaustion and procedural default rules at 28 U.S.C. § 2254(b)(1)(B), which permits
20   consideration of unexhausted claims where "circumstances exist that render such [state]
21   process ineffective to protect the rights of the applicant."  The cause and prejudice standard
22   is one example of such circumstances, but the simple "need" for habeas relief is not.

23        **Actual Innocence** - The standard for "cause and prejudice" is one of discretion
24   intended to be flexible and yielding to exceptional circumstances.  *Hughes v. Idaho State*
25   *Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish
26   cause may be excused "in an extraordinary case, where a constitutional violation has
27   probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477
28   U.S. 478, 496 (1986) (emphasis added).

Here, Petitioner has not expressly argued "actual innocence" as a basis for excusing any procedural default.  However, his Ground 5 is an assertion of actual innocence.

The standard for "actual innocence" to avoid a procedural default is the same as that applied in evaluating whether to allow successive habeas petitions.  *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992). That standard was articulated in *Kuhlmann v. Wilson*, 477 U.S. 436 (1986) as follows:

> [T]he prisoner must "show a fair probability that, in the light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt."

*Id.*, 477 U.S., at 455, n. 17, quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142, 160 (1970).

A petitioner asserting his actual innocence must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror would have found the defendant guilty.  *Id.* at 329.  This standard is referred to as the "*Schlup* gateway."  *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Here, Petitioner fails to make any showing of his actual innocence.  His Ground 5 proffers no new evidence of his actual innocence, nor does it offer anything to impeach the credibility of the evidence presented against him at trial.  While Petitioner protests in his other grounds for relief that various exculpatory evidence was available, Petitioner presents nothing to support the claim, e.g. no affidavits or sworn statements by witnesses, etc.  Such conclusory allegations are insufficient to support a claim or justify an evidentiary hearing.  *See Weeks v. Bowersox,* 119 F.3d 1342, 1352 (8th Cir. 1997) (no right to evidentiary hearing on actual innocence claim where no affidavits from purported witnesses submitted, and expected testimony not specified).

Even if this Court were to accept Petitioner's unsupported allegations that Mr. Pennell would testify that he observed Petitioner's purchase of the truck, and that Ms. Dyer would testify that she saw paperwork for the purchase of the truck and a broken off key, the Court could not say that no reasonable juror could have convicted Petitioner. Petitioner's conviction was for possession with knowledge that the truck was stolen. The existence of a sale between Saunders and Petitioner, and Petitioner's possession of a broken off key would not have left the jury without evidence that the Petitioner knew the truck was stolen. They could have reasonably relied upon other evidence of its stolen status, including the purchase price ($1,000 compared to a value of $3,900), the presence of the owner's tools in the truck, that the truck had never been titled in Saunders' name, etc. Moreover, the jury could reasonably have discounted Ms. Dyer's testimony, and have accepted instead the arresting officer's testimony that Petitioner had no paperwork evidencing a sale.

Petitioner has failed to establish his actual innocence to excuse his procedural default.

**Summary** - Based upon the foregoing, with the exception of Grounds 1(c) (ineffective assistance re failure to interview potential witnesses) and 1(g) (failure to argue the jury's expectation to hear testimony from a listed witness), all of Petitioner's claims are procedurally defaulted or procedurally barred, and must be dismissed with prejudice.

## C.  GROUNDS 1(c) - INEFFECTIVE ASSISTANCE RE WITNESSES

Petitioner asserts in his Ground 1(c) that trial counsel was ineffective because he failed to interview potential witnesses, *i.e.* Charlie Pennell, an eyewitness to Petitioner's purchase of the truck from Donnie Saunders, and Carrie Dyer, Petitioner's passenger at the time of his arrest who saw paperwork for the purchase of the truck and Petitioner putting a broken off key into the ignition. Respondents argue that the trial court properly found that trial counsel made a reasonable tactical decision to not call Ms. Dyer due to concerns about her testimony and criminal history, and there was no evidence that counsel knew of the existence of Mr. Pennell at the time of trial. Respondents argue that based upon those factual findings, the trial court properly found that trial counsel's performance was not

1   defective.  (Response, #13 at 27-28.) Petitioner does not reply to those arguments.

2

3   **1.  Standard of Habeas Review**

4       In evaluating the merits of Petitioner's claims, this Court is subject to a series of

5   limitations and presumptions.

6       **Legal Determinations** - While the purpose of a federal habeas proceeding is to search

7   for violations of federal law, not every error justifies relief.  "[A] federal habeas court may

8   not issue the writ simply because that court concludes in its independent judgment that the

9   state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24–

10  25 (2002) (per curiam).  To justify habeas relief, a state court's decision must be "contrary

11  to, or an unreasonable application of, clearly established Federal law, as determined by the

12  Supreme Court of the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).

13      **Intrinsic Review of Facts** - Further, Federal courts are authorized to grant habeas

14  relief in cases where the state-court decision  "was based on an unreasonable determination

15  of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §

16  2254(d)(2). "Or, to put it conversely, a federal court may not second-guess a state court's

17  fact-finding process unless, after review of the state-court record, it determines that the state

18  court was not merely wrong, but actually unreasonable."  *Taylor v. Maddox*, 366 F.3d 992,

19  999 (9th Cir. 2004).

20      **Extrinsic Review of Facts** - Moreover, a state prisoner is not free to attempt to retry

21  the facts of his case in the federal courts.  There is a well established presumption of

22  correctness of state court findings of fact.  This presumption has been codified at 28 U.S.C.

23  § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall

24  be presumed to be correct" and the petitioner has the burden of proof to rebut the

25  presumption by "clear and convincing evidence."

26      **Applicable State Court Determination** - In applying these standards, a federal

27  habeas court reviews the "last reasoned decision" by a state court. *Robinson v. Ignacio*, 360

28  F.3d 1044, 1055 (9th Cir. 2004).

1    **2.  Standards for Finding Ineffective Assistance of Counsel**

2          Generally, claims of ineffective assistance of counsel are analyzed pursuant to

3    *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim,

4    petitioner must show:  (1) **deficient performance** - counsel's representation fell below the

5    objective standard for reasonableness; and (2) **prejudice** - there is a reasonable probability

6    that, but for counsel's unprofessional errors, the result of the proceeding would have been

7    different. *Strickland*, 466 U.S. at 687-88, 694.  Although the petitioner must prove both

8    elements, a court may reject his claim upon finding either that counsel's performance was

9    reasonable or that the claimed error was not prejudicial.  *Id.* at 697.

10         This two-pronged test — deficient performance and prejudice — poses a mixed

11   question of law and fact.  *Strickland*, 466 U.S. at 698; *Thompson v. Calderon*, 86 F.3d 1509,

12   1515 (9th Cir. 1996).  However, in a federal habeas corpus petition, state court findings of

13   fact made while deciding an ineffective assistance of counsel claim are entitled to the

14   presumptions of correctness.  *Bonin v. Calderon*, 59 F.3d 815, 825 (9th Cir. 1995).

15         An objective standard applies to proving deficient performance, and requires a

16   petitioner to demonstrate that counsel's actions were "outside the wide range of

17   professionally competent assistance."  *United States v. Houtcens,* 926 F.2d 824, 828 (9th

18   Cir. 1991)(quoting *Strickland*, 466 U.S. at 687-90).     The reasonableness of counsel's

19   actions is judged from counsel's perspective at the time of the alleged error in light of all the

20   circumstances.  *Kimmelman v. Morrison,* 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at

21   689.  Tactical decisions with which a defendant disagrees cannot form the basis for a claim

22   of ineffective assistance of counsel. *Morris v. California,* 966 F.2d 448, 456 (9th Cir. 1991),

23   *cert. denied,* 113 S. Ct. 96 (1992). "Mere criticism of a tactic or strategy is not in itself

24   sufficient to support a charge of inadequate representation." *Gustave v. United States,* 627

25   F.2d 901, 904 (9th Cir. 1980).  Moreover, the reviewing court need not determine the actual

26   reason for an attorney's actions, as long as the act falls within the range of reasonable

27   representation.   *Morris v. California,* 966 F.2d at 456-457.

28

**3.  Application to Trial Court's Decision**

    **Defective Performance** - Here, the trial court applied the appropriate standard of defective performance and prejudice to Petitioner's challenge to counsel's failure to call Mr. Pennell and Ms. Dyer.  It is true that the trial court utilized an Arizona formulation of the prejudice prong, "minimal competence as determined by professional norms" (Exhibit O, Order 4/29/02 at 2-3).  In referencing that standard, however, the trial court cited *State v. Nash,* 143 Ariz. 392, 397, 694 P.2d 222, 227 (1985), which also referenced the "minimal competence" language, but explicitly adopted the deficient performance standard established in *Strickland*. *Nash*, 143 Ariz. at 397, 694 P.2d at 227.

    In finding that counsel's performance was not defective, the trial court made factual findings that: (1) trial counsel made a tactical decision to not call Ms. Dyer based upon concerns about the substance of her testimony and her criminal history; (2) trial counsel was never aware of Mr. Pennell's existence as a potential witness.  (Exhibit O, Order 4/29/02 at 2.)  Petitioner offers nothing to show that these findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Nor has he shown anything to overcome the presumption of correctness which attaches to these findings. let alone providing the "clear and convincing evidence"required by 28 U.S.C. § 2254(e)(1).  Nor has Petitioner offered anything to counter the trial court's conclusion that these facts showed trial counsel's performance was not defective.

    As for counsel's decision to not call Ms. Dyer, tactical decisions with Petitioner disagrees cannot form the basis for a claim of ineffective assistance of counsel.  *Morris v. California,* 966 F.2d 448, 456 (9th Cir. 1991). *See Denhum v. Deeds,* 954 F.2d 1501, 1505-06 (9th Cir. 1992) (no ineffective assistance where counsel declined to call alibi witness "because of 'glaring' inconsistencies in her proposed testimony").

    As for counsel's failure to call Mr. Pennell, the reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison,* 477 U.S. 365, 381 (1986); *Strickland,* 466 U.S. at

689.  Counsel cannot be faulted for failure to call a witness of whom he has no knowledge, unless he has failed to adequately investigate the case.  *See Hendricks v. Calderon,* 70 F.3d 1032 (9th Cir. 1995).  There is nothing in the record, and Petitioner suggests nothing, which would have caused trial counsel to undertake an investigation to discover  Mr. Pennell. The trial court found that Petitioner had only told trial counsel about Ms. Dyer and Mr. Saunders as potential witnesses.  (Exhibit O, Order 4/29/02 at 2.).

**Prejudice** - The trial court also found that "any failure to call these witnesses did not prejudice Petitioner in light of the evidence presented at trial." Thus, the trial court identified the proper standard.    Although Petitioner offers nothing to show that the trial court's application of that standard was unreasonable, the lack of any other direct evidence to contradict or support Petitioner's innocent purchaser defense would suggest that testimony by witnesses supporting that defense may have altered the outcome of the trial. Nonetheless, even if the trial court erred in finding a lack of prejudice, such a finding was not necessary to the rejection of Petitioner's ineffective assistance claim because the court had already found a lack of defective performance.   Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Strickland*, 466 U.S. at 697.

**Conclusion** - Based on the foregoing, Petitioner's claims of ineffective assistance of trial counsel concerning the failure to call Ms. Dyer and Mr. Pennell must be denied.


**D.  GROUNDS 1(g) - INEFFECTIVE ASSISTANCE RE SAUNDERS TESTIMONY**

Petitioner asserts in his Ground 1(g) that trial counsel was ineffective for failing to argue the jury's expectation to hear testimony from a listed witness as a basis for calling Donnie Saunders to the stand.  Respondents argue that the trial court properly rejected this claim in Petitioner's first PCR petition, based upon a determination that there was no prejudice.  (Answer, #13 at 27.)

The trial court concluded that trial counsel had performed deficiently by failing to argue for the right to call Donnie Saunders to the stand and requiring him to assert his Fifth

Amendment privileges before the jury to explain why Petitioner was not presenting testimony from Saunders.  (Exhibit O, Order 4/29/02 at 3.)   However, the trial court concluded that "trial counsel's deficient performance did not prejudice Petitioner in light of the evidence presented at trial."  (*Id.*)

The trial court again identified the proper standard, and Petitioner offers nothing to show that the trial court's application of that standard was contrary to or an unreasonable application of federal law.

It is true that the evidence actually presented to the jury arguably would have left the impression that Donnie Saunders was purely an invention by Petitioner. The arresting officer indicated that he was not successful at the time of arrest in contacting Saunders, although Petitioner had provided him a phone number.  (Exhibit B, R.T. 1/12/99 at 58, 67-68.) Another investigating officer testified that a court order following up a lead on that phone number was unsuccessful. (*Id.* at 73-77.) Thus, the evidence before the jury was that no one had been able to contact Saunders, and Petitioner was the only one asserting that Saunders even existed.

On the other hand, had Saunders appeared, the jury would have been precluded from making any inferences from his reliance on his Fifth Amendment rights against self-incrimination.  "[T]he general rule is that when a witness, other than the accused, declines to answer a question on the ground that his answer would tend to incriminate him, that refusal alone cannot be made the basis of any inference by the jury, either favorable to the prosecution or favorable to the defendant."  Drechsler, *Inferences Arising from Refusal of Witness Other than Accused to Answer Question on the Ground That Answer Would Tend to Incriminate Him*, 24 A.L.R.2d 895, § 2 (2006).   They would have simply had corroboration of the fact that Saunders actually existed.  That would not preclude them from concluding that Saunders delivered the truck to Petitioner with Petitioner's knowledge or reason to know of its stolen status.  That conclusion would be sufficient to find Petitioner guilty.  *See* A.R.S. § 13-1802(a)(5) (defining crime of theft to include knowingly "controls property of another knowing or having reason to know that the property was stolen").

There was substantial evidence that Petitioner knew or had reason to know of the stolen status of the vehicle, including the broken, keyless, status of the ignition, the lack of a  license plate light,  the lack of evidence of a sale of the vehicle to or by Saunders or Petitioner, and the extremely low purchase price claimed by Petitioner (e.g. $1,000 compared to a value of $3,900).  Thus, even if the jury had concluded that Petitioner actually had "purchased" the truck from Saunders, they would have still had significant evidence that under the conditions of that sale Petitioner knew or and reason to know that the truck was stolen.

Under these circumstances, the undersigned cannot say that the trial court was unreasonable in its determination that there was not a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

## E. SUMMARY

Petitioner failed to fairly present, and has now procedurally defaulted on the claims in Ground 6.  Petitioner presented the claim in Ground 3(a)(denial of request to call Saunders), but that claim was disposed of on the independent and adequate state ground of waiver, and is thus procedurally barred.  Petitioner presented the claims in Grounds 1 (except parts (c) and (g)), 2, 3(b), 3(c), 4,  5, and 7, but those claims were disposed of on the independent and adequate state grounds of Arizona's preclusion bar, and are thus procedurally barred.  Petitioner has failed to show cause and prejudice or actual innocence to avoid the effect of his procedural bar or procedural default, and therefore these claims must be dismissed with prejudice.

Petitioner has properly exhausted his claims in Grounds 1(c) (ineffective assistance re failure to interview potential witnesses) and 1(g) (failure to argue the jury's expectation to hear testimony from a listed witness), but each of these claims is without merit and must be denied.

**IV.  RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Grounds 1 (except parts (c) and (g)), 2, 3, 4,  5, 6, and 7 of  the Petitioner's Petition for Writ of Habeas Corpus, filed December 12, 2005 (#1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that  Grounds 1(c) and (g) of  the Petitioner's Petition for Writ of Habeas Corpus, filed December 12, 2005 (#1) be **DENIED**.


**V. EFFECT OF RECOMMENDATION**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 proceedings. Thereafter, the parties have ten (10) days within which to file a response to the objections.   Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).


DATED: March 26, 2007                        _____
                                             JAY R. IRWIN
                                             United States Magistrate Judge